# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 1-374-1** |
| **v.** | : | |
| | : | |
| **DIODAYAN LEDESMA CUESTA** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                         SEPTEMBER 11, 2020

## MEMORANDUM OPINION

**BACKGROUND**

Before this Court is a *pro se* motion for a reduction in sentence filed by Diodayan Ledesma Cuesta ("Defendant") pursuant to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A)(i), in which he seeks a reduction of his sentence to a time-served sentence due to "extraordinary and compelling reasons." (Doc. 163).  The Government opposes the motion.  (Doc. 170, 175).

On December 19, 2001, Defendant was convicted by a jury of Defendant of serious drug trafficking offenses and illegal reentry into the United States.[1]  On March 22, 2002, the Honorable Stewart Dalzell[2] sentenced Defendant to a term of 360 months of imprisonment followed by eight (8) years of supervised release, and imposed the payment of several fines.  (Doc. 70).  Defendant

---

[1]        Specifically, Defendant was convicted of: (1) possession and attempted possession with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1); (2) importation and attempted importation of more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a), and 963; (3) possession and attempted possession with intent to distribute more than 500 grams of cocaine on a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 1903(a), (c)(1)(D), and (j); and (4) reentry and attempted reentry to the United States after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2).

[2]        By Order dated October 16, 2016, this matter was assigned to the undersigned.  (Doc. 148).

is currently serving his sentence at the Federal Correctional Institution Victorville Medium I ("FCI Victorville").

**DISCUSSION**

Generally, courts may not modify a term of imprisonment once it has been imposed except in any case where "extraordinary and compelling reasons warrant such a reduction" and after considering the "applicable policy statements issued by the [United States] Sentencing Commission[.]"[3]  18 U.S.C. § 3582(c)(1)(A)(i-ii)  Additionally, courts must "consider[] the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020).  Congress directed the Sentencing Commission to promulgate policy statements to define "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).  In defining what types of "extraordinary and compelling reasons" might warrant relief, the Sentencing Commission's applicable policy statement includes a defendant's medical condition, age, or family circumstances, as well as "other reasons . . . as determined by the Director of the Bureau of Prisons[.]" U.S.S.G. § 1B1.13.  Medical conditions can constitute an extraordinary and compelling reason if a defendant is: (1) suffering from a terminal illness; or (2) either (a) suffering from a serious physical or medical condition, (b) suffering from a serious functional or cognitive impairment, or (c) experiencing deteriorating

---

[3] A defendant may only move for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).  When a defendant "fail[s] to comply with § 3582(c)(1)(A)'s exhaustion requirement . . . it presents a glaring roadblock foreclosing compassionate release at this point." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  Here, Defendant appears to have properly exhausted his administrative remedies, as demonstrated through the documentation he attached to his motion.

physical or mental health because of the aging process, which substantially diminishes his or her ability to provide self-care within the correctional facility, and from which he or she is not expected to recover.  U.S.S.G. § 1B1.13.

### *Extraordinary and Compelling Reasons*

Here, Defendant argues that his sentence should be reduced for extraordinary and compelling reasons; *to wit*: (1) the unfair length of his sentence which was issued pursuant to "draconian" sentencing guidelines and (2) health conditions that make him particularly susceptible to severe illness or death if he were to contract COVID-19.

In its response, the Government objects to both grounds.  Specifically, the Government argues that Defendant's argument regarding the general unfairness of his sentence is not a valid ground for compassionate release under the statute and applicable policy statements.  This Court agrees.  As noted, a court may modify a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and any such reduction "is consistent with the applicable policy statements issued by the [United States] Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i). The unfairness of a sentence is not a basis for compassionate release.  Therefore, Defendant's first argument is without merit.

As to Defendant's argument regarding his health conditions, the Government concedes that one of Defendant's medical conditions constitutes "an 'extraordinary and compelling reason' allowing consideration of relief."  (Doc. 170 at 15).   Notwithstanding this concession, the Government argues that Defendant is not entitled to relief under the applicable § 3553(a) sentencing factors because Defendant poses "a possible danger to the community."

Defendant's medical records support that he has been diagnosed with medical illnesses that qualify as extraordinary and compelling medical reasons for compassionate release consideration.

3

Defendant's medical records reflect that he suffers from the following medical conditions: (1) stage-three chronic kidney disease; (2) hypertension; (3) prediabetes; (4) hyperlipidemia; and (5) adenocarcinoma of the prostate (prostate cancer).  Consistent with U.S.S.G. § 1B1.13, medical conditions can constitute an extraordinary or compelling reason if, *inter alia*, a defendant is suffering from a terminal illness, or from a serious physical or medical condition or a serious functional or cognitive impairment, either of which substantially diminishes his or her ability to provide self-care within the correctional facility, and from which he or she is not expected to recover.  U.S.S.G. § 1B1.13.  The Government acknowledges "that an inmate who presents a risk factor identified by the [Center for Disease Control and Prevention ("CDC")] as increasing the risk of an adverse outcome from COVID-19 presents a 'serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility,' as stated in [the Sentencing Commission's policy statement because such a defendant] may be less able to protect himself against an unfavorable outcome from the disease." (Doc. 170 at 15).  The Government concedes that Defendant's stage-three chronic kidney disease is such a condition.  *Id*.  ("Here, the defendant presents with stage 3 chronic kidney disease. . . . The defendant therefore presents an 'extraordinary and compelling reason' allowing consideration of relief.").  Consistent with the facts personal to Defendant and the statute, this Court finds that Defendant has met the statutory threshold requirements for consideration for a reduction of his sentence based on extraordinary and compelling reasons under U.S.C. § 3582(c)(1)(A)(i).  This Court also notes that Defendant's prostate cancer is a CDC-identified risk factor, and his

hypertension is a potential risk factor;[4] both medical conditions augment this Court's finding that Defendant meets the threshold requirements for a sentence reduction.[5]

### *Section 3553(a) Considerations*

Having determined that Defendant has established an extraordinary and compelling reason within the meaning of § 3582(c)(1)(A)(i) that is consistent with the Sentencing Commission's applicable policy statements, this Court must next consider the applicable sentencing factors set forth in § 3553(a) and determine whether Defendant poses a danger to anyone. *See* 18 U.S.C. § 3582(c)(1)(A); *Pawlowski*, 967 F.3d at 329. The sentencing factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense . . . and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; [(4) the applicable sentencing range as set forth by the Sentencing Guidelines]; (5) any pertinent policy statement . . . ; (6) the need to avoid unwarranted sentence disparities among [similar] defendants . . . ; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Among these factors, this Court deems factors one, two, and four to be relevant to the present case.

Prior to Defendant's sentencing hearing, a probation officer prepared a presentence report. Therein, it reports that Defendant was born in Colombia in 1963, was single and had a daughter.

---

[4] The CDC has suggested hypertension may put someone at increased risk, but classifies it differently from other confirmed risk factors due to limited research and data.

[5] This Court notes that Defendant's prostate cancer may be a "terminal illness" qualifying him for consideration under the first medical condition prong of U.S.S.G. § 1B1.13, as well. However, as of July 29, 2020, the Government reported that no official prognosis had been noted in Defendant's medical records. (Doc. 175 at 1). Thus, this Court has insufficient information at this time to rely on the terminal illness prong of U.S.S.G. § 1B1.13 as grounds for considering Defendant's compassionate release. Notably, this insufficiency is irrelevant in light of Defendant's qualification under the second medical condition prong, as explained above.

Based on prior convictions of robbery in 1985 and of conspiracy to distribute cocaine in 1988, Defendant was determined to be a career offender pursuant to 54 U.S.S.G. 54B1.1. It was, in part, because of the enhancement as a career offender that that the sentencing judge imposed a sentence of 360 months imprisonment. The Government relies on Defendant's career offender status designation to argue Defendant poses a danger to the community. While that may have been the situation at time of sentence, in a 2016 letter in support of commutation of Defendant's sentence, the sentencing judge wrote "[i]f ever there was a defendant who was as much a victim as a convicted felon, it was this [D]efendant." (Doc. 163 at 7). In that letter, the sentencing judge characterized Defendant as "basically a mule who endured being in the hold of a ship carrying bananas from Colombia to Philadelphia" and posited that Defendant's proposed release in 2016 would have been in the interests of justice. *Id*. Additionally, the Assistant United States Attorney who then prosecuted this case, supported the commutation of Defendant's sentence in 2016. The original judge and prosecutor were intimately involved during the prosecution of this matter and were familiar with the facts and circumstances surrounding the offenses and Defendant. Though not bound by their opinions, this Court infers from their support for Defendant's commutation that they believe he posed no or little danger to the community.

The Government argues that because of Defendant's 1985 robbery conviction, he remains a danger to the community. However, the robbery conviction is more than thirty-five years old and occurred prior to the instant conviction which are non-violent offenses. Defendant also rebuts the Government's argument and offers his prison disciplinary record to show no violent tendencies or that he is a danger to anyone while in custody.[6] To the contrary, Defendant seems to have made

---

[6] The Government does not offer a contrary characterization, and noted that in Defendant's eighteen (18) years of incarceration, his only infractions include: "mail abuse (2020); verbally arguing with another inmate (2017); fighting with another inmate (2004); and interfering with taking count (2004)." (Doc. 170

efforts towards rehabilitation, including maintaining employment through the Unicor program. Further, Defendant has served more than eighteen (18) years of his thirty (30) year sentence—a sentence the sentencing judge indicated that he "was obliged to impose" due to the quantity of drugs involved, but did not find to be in the interests of justice; (Doc. 163 at 7); and a sentence that Defendant argues would not have been mandatory if he were sentenced today.[7] While not second-guessing the reasons for imposing the original sentence, Defendant has already served the ten-year mandatory minimum sentence involved, and that during Defendant's eighteen (18) years in federal custody, he has only had minor infractions. When considering all of these facts, this Court cannot find that Defendant poses a danger to the public or that his continued incarceration is necessary to protect the public from further crimes.

Regarding the applicable sentencing range § 3553(a) factor, Defendant's guideline range if he were sentenced today is identical to what it was at the time of his original sentencing (360 months to life imprisonment), since he would still be classified as a career offender. (Doc. 170 at 17). The only significant difference is that the sentencing guidelines were then mandatory, and are now advisory. *See supra* n. 7. As previously mentioned, the sentencing judge expressed an opinion that this sentencing range was too harsh given the facts and circumstances of Defendant's involvement. Though this Court is not bound by what the sentencing judge may have decided if confronted today with this motion, his letter of support for commutation weighs favorably in this matter.

---

at 5). These are objectively minor infractions and of little consequence when examining a record spanning eighteen (18) years.

[7]   *See United States v. Booker*, 543 U.S. 220 (2005) (establishing the guidelines as advisory).

7

Lastly, the Government argues that Defendant should not be release because he currently has two detainers lodged against him,[8] so "if he were released, he would almost certainly not be free of incarceration as the pandemic continues." (Doc. 170 at 18). While some courts have declined to release other defendants, who have pending detainers and, therefore, would not actually leave federal custody if granted compassionate release, such decisions are made on a case-by-case basis in light of all relevant factual circumstances. Here, while granting Defendant's motion will not result in his *immediate* release, the ultimate end result (after addressing his two detainers) aligns with Defendant's desire for release and his proposed release plan, which is to return to Colombia. To ensure that Defendant understood the logistical consequences and continued risk of contracting COVID-19 should his motion be granted, this Court issued an Order requesting clarification from Defendant. The Order noted that if Defendant's motion was granted, he would face continued detention due to his two detainers, be subject to deportation to Colombia, and likely be transferred to other federal facilities in the interim. *See* Doc. 171. Thereafter, Defendant filed multiple documents acknowledging understanding these possible consequences and declaring that he still wished to proceed with the motion. *See* Doc. 174, 176. Defendant also informed this Court that he has been in communication with ICE and recorded his desire for voluntary departure with the agency. (Doc. 176). Therefore, the fact that Defendant has pending detainers does not render a reduction in his sentence pointless.

In summary, based on the totality of the information before this Court and after weighing the arguments made and the relevant § 3553(a) factors, this Court finds that a modification of Defendant's sentence is warranted. After reviewing his 2002 presentence report and further noting

---

[8] Specifically, Defendant has (1) a 2003 detainer in the United States District Court for the Middle District of Florida for a violation of supervised release, and (2) an ICE detainer rendering him subject to deportation to Colombia.

that he has served the mandatory minimum sentences for his drug offenses, that he suffers medical conditions that qualify as extraordinary and compelling reasons for modification of his sentence, and that during his eighteen years of imprisonment has made efforts to rehabilitate himself, this Court finds Defendant's sentence shall be reduced to time-served. . This Court further finds that the eighteen (18) years of the sentence served is an adequate sentence, sufficient but not greater than necessary to punish Defendant for his offenses, serves to reflect the seriousness of his offenses, and provide adequate deterrence to future criminal conduct. Although this Court recognizes that a term of supervised release is generally not imposed when a defendant is subject to deportation, nevertheless, the term of supervised release previously imposed is not affected by the reduction of his prison term.

**CONCLUSION**

For the reasons stated herein, Defendant's motion for a reduction in sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), is granted. Defendant has established that extraordinary and compelling reasons exists to warrant a reduction in his sentence, and the applicable factors set forth in 18 U.S.C. § 3553(a) support a reduction. An Order consistent with this Memorandum Opinion will be filed separately.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.